[Cite as *Dean v. Cox*, 2012-Ohio-782.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

Douglas M. Dean, et al.,                   :
                                           :
    Plaintiffs-Appellants.             :
                                           :       Case No. 11CA10
    v.                                 :
                                           :       DECISION AND
Thomas E. Cox, et al.,                     :       JUDGMENT ENTRY
                                           :
    Defendants-Appellees.              :       Filed:  February 23, 2012
_____

APPEARANCES:

Stephen C. Rodeheffer, Rodeheffer and Miller, Ltd., Portsmouth, Ohio, for Appellants.

Robert C. Anderson, Anderson & Anderson Co., LPA, Ironton, Ohio, for Appellees.
_____

Kline, J.:

{¶1}     Douglas and Ida Dean (hereinafter the "Deans") appeal the judgment of the Lawrence County Court of Common Pleas.  The trial court determined (1) that Thomas and Mellissa Cox (hereinafter the "Coxes") had title to a disputed tract of land between the Deans' and Coxes' property and (2) that the Deans had not acquired the tract under the doctrine of adverse possession.  The Deans contend that the trial court's determination of the boundary line between the parties' properties was against the manifest weight of the evidence.  Because some competent, credible evidence supports the trial court's determination, we disagree.  The Deans also contend that the trial court erred when it determined that they failed to show that they acquired the tract of land through adverse possession.  Because the Deans' use of the disputed property was not sufficient to prevail on a claim of adverse possession, we disagree.

{¶2}     Accordingly, we affirm the judgment of the trial court.

I.

{¶3}     The Deans and the Coxes own neighboring property located on State Route 93 in Lawrence County. The Deans live to the west of the Coxes, and the parties dispute the location of their boundary line. The Coxes own several parcels of land in the area, and they hired Thomas Snyder to conduct a survey of their various parcels. As a result of Snyder's survey, the Deans and the Coxes disputed the ownership of an eighteen-foot-wide tract of land adjacent to the eastern edge of Deans' property and the western edge of the Coxes' property (hereinafter the "Disputed Tract"). (We note that the depth of the Disputed Tract is not clear from the record.) The Deans had been maintaining the Disputed Tract for many years, but Snyder's survey showed that the Coxes actually owned the Disputed Tract. In response to Snyder's survey, the Deans hired APX Consulting to conduct a survey. The APX survey conflicted with Snyder's survey. The APX survey showed that the Deans' property included the Disputed Tract.

{¶4}     In March 2009, the Deans filed suit and sought either (1) a declaratory judgment stating that the Deans owned the Disputed Tract or (2) an order that the Deans acquired title to the Disputed Tract through adverse possession.

{¶5}     The Deans and the Coxes each presented evidence of where they believed the parties' boundary line should be located. Loren Purdom of APX Consulting testified on behalf of the Deans, and Snyder testified on behalf of the Coxes.

{¶6}     The Deans also presented evidence to support their adverse possession claim. The Deans purchased their property in 1963. And since acquiring the property,

they have continuously maintained the Disputed Tract.  For example, the Deans mowed the Disputed Tract once or twice a week.

{¶7}     The Deans also used the Disputed Tract for various activities.  For example, they occasionally parked and washed cars on the Disputed Tract.  The Deans periodically placed a swing set on the Disputed Tract for their children to use.  And at one point, a child planted a 4-H garden on the Disputed Tract.

{¶8}     The parties tried the case to a magistrate, who decided in favor of the Coxes.  After the Deans timely filed objections, the trial court issued a decision in which it determined (1) that the Coxes' evidence of the parties' boundary lines was more credible and (2) that the Deans failed to demonstrate that they acquired title to the Disputed Tract through adverse possession.  Thus, the trial court decided that Snyder's survey represented the proper boundary line for the parties' properties.  Therefore, the trial court decided that the Coxes owned the Disputed Tract.

{¶9}     The Deans appeal and assert the following assignments of error: I. "THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS APPLICATION OF THE LAW OF ADVERSE POSSESSION TO THE FACTS IN THIS CASE."  And, II. "THE TRIAL COURT'S FINDING THAT THE APPELLEES' SURVEYOR CORRECTLY DETERMINED THE LOCATION OF THE PARTIES COMMON LINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II.

{¶10}     For ease of analysis, we will address the Deans' assignments of error out of order.  We begin with the Deans' second assignment of error.  In their second assignment of error, the Deans argue that the trial court's determination that the Coxes'

survey correctly determined the boundary line between the parties' properties was against the manifest weight of the evidence.

**{¶11}** "We will not reverse a trial court's judgment as being against the manifest weight of the evidence as long as some competent, credible evidence supports it." *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶ 11 (4th Dist.), citing *Sec. Pacific Natl. Bank v. Roulette*, 24 Ohio St.3d 17, 20, 492 N.E.2d 438 (1986); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). Under this standard of review, "we must uphold the judgment so long as the record contains 'some evidence from which the trier of fact could have reached its ultimate factual conclusions.'" *Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App.3d 326, 2009-Ohio-5263, 920 N.E.2d 1023, ¶ 27 (4th Dist.), quoting *Amsbary* at ¶ 11, in turn quoting *Bugg v. Fancher*, 4th Dist. No. 06CA12, 2007-Ohio-2019, ¶ 9. Additionally, we are "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "This is because issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *Pottmeyer v. Douglas*, 4th Dist. No. 10CA7, 2010-Ohio-5293, ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co.* at 80.

**{¶12}** The Deans and the Coxes each presented the testimony of surveyors to support their respective claims regarding their common boundary. The Coxes'

surveyor, Snyder, testified that, according to his calculations, the Disputed Tract belonged to the Coxes. The Deans' surveyor was APX Consulting. Loren Purdom supervised the Deans' survey for APX Consulting, and Purdom testified (1) that Snyder's survey was inaccurate and (2) that the Disputed Tract actually belonged to the Deans.

{¶13} The Deans assert that the Coxes' surveyor, Snyder, incorrectly located the corners of the Deans' property. To determine the proper southwest corner of their property, the Deans argue that their deed requires measurements from three separate monuments – two sycamore trees and a stone. Purdom found the roots of one sycamore and the stump of another, and Purdom testified that these were the trees called for in the survey. Snyder, however, testified that these sycamores were not the same trees mentioned in the Deans' deed. Purdom also found a stone, which he claimed represented the stone called for in the deed. Snyder, however, testified that he concluded this stone was not the stone referenced in the Deans' deed. Thus, Snyder's testimony established a different location for the southwest corner of the Deans' property than Purdom's location.

{¶14} To locate the northwest corner of the Deans' property, the Deans' deed calls for a pin to mark the location of the corner. Purdom testified that his crew found the pin called for in the deed in an area that had been disturbed (possibly by a bulldozer). Snyder, by contrast, testified that a white oak tree marked the northwest corner of the Deans' property.

{¶15} Purdom testified that a stone with a carved "X" marked the northeast corner of the Deans' property. Snyder did not find this stone when he did his initial survey.

Snyder testified that he doubted the validity of the stone that Purdom found as a marker because the stone was flush to the ground. Snyder stated that, in his many years of surveying, he had never encountered a stone that was flush to the ground. According to Snyder, stone markers were either buried over time or still protruding from the ground. Snyder testified (1) that he expressed his concern to Purdom about the stone being flush to the ground and (2) that when Snyder returned to the site, the stone had been dug up and was protruding from the ground. In its decision, the trial court stated that it was "disturbed by the change and appearance of stone monuments in the field work for the [Deans'] surveyor[.]" Judgment Entry at 2. Snyder used a different stone to mark the Northeast corner of the property. The difference between the location of the stone Snyder used and the stone Purdom used for the northeast corner was approximately eighteen to twenty feet, which is the approximate width of the Disputed Tract.

{¶16}     (The location of the southeast corner is dependent upon the other three corners. Thus, the dispute is largely over the location of the other three corners of the Deans' property.)

{¶17}     The trial court's judgment entry states as follows:

Upon a thorough review of the testimony of the surveyors and witnesses upon this issue, the Court finds * * * Mr. Snyder's testimony was the more credible for the following reasons: While it may be a technical point, Mr. Snyder did extensive work personally in coming to his opinions as to the ownership of the contested real estate. Snyder performed all of his own research, field work and preparation of the survey plat. While it was not

inappropriate for Mr. Perdom [sic] to use a field crew to perform similar work, a comparison of the methods of both surveyors must find in favor of one over the other, and this Court finds the testimony of Mr. Snyder to be greater in weight and logic.  Also, to no small extent, the Court is disturbed by the change and appearance of stone monuments in the field work for the [Deans'] surveyor, as was the Magistrate.  This furthers the opinion of the Court that the Snyder survey was superior.  (Emphasis sic.)  Judgment Entry at 2.

**{¶18}** After reviewing the record, we conclude that there was competent, credible evidence to support the Coxes' claims regarding the location of the boundary lines between the Deans' and Coxes' properties.  Specifically, the Coxes presented the testimony of their surveyor, Thomas Snyder.  The trial court essentially made a credibility determination, and it determined that Snyder's testimony was more credible than the testimony of the Deans' surveyor.  And under our standard of review, we defer to the credibility determinations of the trial court.  Thus, we cannot conclude that the trial court's decision was against the manifest weight of the evidence.  Accordingly, we overrule the Deans' second assignment of error.

III.

**{¶19}** In the Deans' first assignment of error, they argue that the trial court erred when it determined that the Deans did not establish ownership of the Disputed Tract through adverse possession.

**{¶20}** Our review of an adverse possession claim depends on whether a party challenges a trial court's evidentiary determination or a legal conclusion.  To the extent

that the Deans argue that the trial court's conclusions are against the manifest weight of the evidence, we apply the deferential review of the trial court's decision that we detailed above. *See Pottmeyer*, 2010-Ohio-5293, ¶ 21. "However, to the extent we construe [the Deans'] arguments as challenges to the trial court's choice or application of law, our review is de novo." *Id.*

**{¶21}**    Adverse possession is a disfavored method of acquiring title to real property. *Id.* at ¶ 22. "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), syllabus. See, also, *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, ¶ 7. "It is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character, and not the remote motives or purposes of the occupant." *Humphries v. Huffman*, 33 Ohio St. 395, 402 (1878). This "'occupancy must be such as to give notice to the real owner of the extent of the adverse claim.'" *Evanich* at ¶ 8, quoting *Humphries* at 404. "[T]he intent to take the property of another is not necessary; the intent to occupy and treat property as one's own is all that is required." *Id.* at ¶ 12.

**{¶22}**    We find that the Deans have not satisfied the requirements for adverse possession. First, the trial court found as follows: "Miscellaneous items such as swing sets, car washing, a 4-H garden and play areas for the children had been carried out on the contested property by the [Deans]. However, the *only item* visibly conducted *openly* and *continuously* on the premises was *mowing*, and this, only upon the portion of the property closer to S.R. 93." (Emphasis added.)  Judgment Entry at 3.  And after

reviewing the record, we find that competent, credible evidence supports this factual finding.  Next, we have held that "activities conducted merely to maintain the land, such as mowing, are generally not sufficient to establish adverse possession."  *Stover v. Templeton*, 4th Dist. No. 95CA32, 1996 WL 112683, *3 (Mar. 11, 1996).  Therefore, after a de novo application of the law to the trial court's factual finding, we find that the Deans cannot establish adverse possession based on their continuous mowing of the Disputed Tract.  Accordingly, we overrule the Deans' second assignment of error.

IV.

**{¶23}**      In conclusion, we overrule both of the Deans' assignments of error.  As a result, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**